# 24-313

## IN THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

SMART STUDY CO., LTD.,

*Plaintiff-Appellant,*

v.

SHENZHENSHIXINDAJIXIEYOUXIANGONGS1,
CHANGGESSHANGMAOYOUXIANGONGSI,
(*caption continued inside*)

*Defendants-Appellees*

Appeal from the United States District Court
for the Southern District of New York

**BRIEF OF *AMICI CURIAE* THE TOY ASSOCIATION, INC., JUVENILE PRODUCTS MANUFACTURERS ASSOCIATION, INC., AND HALLOWEEN INDUSTRY ASSOCIATION, INC. IN SUPPORT OF APPELLANT AND REVERSAL**

Justin R. Gaudio
Amy C. Ziegler
GREER, BURNS & CRAIN, LTD.
300 S. Wacker Drive, Suite 2500
Chicago, Illinois 60606
Tel: (312) 360.0080
Fax: (312) 360.9315

*Counsel for Amici Curiae*

HAPPY PARTY-001, SALIMHIB-US, GEGEONLY, NA-AMZ001, LICHE CUPCAKE STAND, BEIJINGKANGXINTANGSHANGMAOYOUXIANGONGSI, QINGSHU, CKYPEE, WCH-US, THEGUARD, SUJIUMAISUSU, MARY GOOD SHOP, HEARTLAND GO, BLUE VIVI, SMSCHHX, NAGIWART, XUANNINGSHANGWU, QT-US, LADYBEETLE, TONGMUMY, WONDERFUL MEMORIES, KANGXINSHENG1, ACUTEYE-US, NUOTING, TELIKE, HAOCHENG-TRADE, YAMMO202, SHENZHENSHIXINDAJIXIEYOUXIANGONGSI, UNE PETITE MOUETTE, JOYSAIL, XUIYUI7I, ZINGON US, HAITING$, YONGCHUNCHENGQINGMAOYIYOUXIANGONGSI, HUIBI-US, FAMING, BONUSWEN, APZNOE-US, DAZZPARTY, DAFA INTERNATIONAL, YICHENY US, WOW GIFT, JYOKER-US1, SAM CLAYTONDDG, CITIHOMY, WEN MIKE, YOOFLY, CHANGGESHANGMAOYOUXIANGONGSI, SENSIAMZ BACKDROP, VETERANS CLUB, DEF, TUOYI TOYS, TOPIVOT, LVYUN, SUNNYLIFYAU, XUEHUA INC., SMASSY US, YLILILY, GAIFEI TRADE CO LTD.,

*Defendants.*

## <u>RULE 26.1 CORPORATE DISCLOSURE STATEMENT</u>

The Toy Association, Inc. is a New York nonprofit corporation organized under the laws of the State of New York. It has no parent corporation. No publicly held corporation owns ten percent or more of its stock.

The Juvenile Products Manufacturers Association, Inc. is a not-for-profit corporation organized under the laws of the State of New York. It has no parent corporation. No publicly held corporation owns ten percent or more of its stock.

Halloween Industry Association, Inc. (also d/b/a Halloween & Costume Association) is a nonprofit corporation organized under the laws of the State of Delaware. No publicly held corporation owns ten percent or more of its stock.

# **TABLE OF CONTENTS**

RULE 26.1 CORPORATE DISCLOSURE STATEMENT.......................................i

TABLE OF AUTHORITIES ..............................................................................iii

STATEMENT OF INTEREST OF AMICI CURIAE................................................1

SUMMARY OF THE ARGUMENT ....................................................................3

ARGUMENT .....................................................................................................4

CONCLUSION..................................................................................................7

CERTIFICATE OF COMPLIANCE.....................................................................9

CERTIFICATE OF SERVICE ...........................................................................10

## TABLE OF AUTHORITIES

**Cases**

*In re OnePlus Tech. (Shenzhen) Co., Ltd*.,
   No. 2021-165, 2021 WL 4130643 (Fed. Cir. Sept. 10, 2021)................................7


*Louis Vuitton S.A. v. Lee*,
   875 F.2d 584 (7th Cir. 1989) .............................................................................4


*Nagravision SA v. Gotech International Technology Limited*,
   882 F.3d 494 (5th Cir. 2018) ............................................................................7

**Other Authorities**

Chow, Daniel C.K., *Alibaba, Amazon, and Counterfeiting in the Age of the
   Internet*, 40 Nw. J. Int'l L. & Bus. 157, 171 (2020) ...........................................5, 6


Department of Homeland Security, Office of Strategy, Policy & Plans, *Combating
   Trafficking in Counterfeit and Pirated Goods, Report to the President of the
   United States*, Jan. 24, 2020...........................................................................4, 6


U.S. Customs and Border Protection, *Intellectual Property Rights Seizure
   Statistics, Fiscal Year 2021*, CBP Publication No. 2018-0922, Sept. 29, 2022.4, 5

**Rules**

2d Cir. R. 29.1(b) .................................................................................................1


Fed R. App. P. 29(a)(4)(E)....................................................................................1


Fed. R. Civ. P. 4(f) ...............................................................................................7

**STATEMENT OF INTEREST OF AMICI CURIAE**

Founded in 1916, The Toy Association, Inc. is a New York not-for-profit corporation that is the trade association representing businesses that design, produce, license and deliver toys and youth entertainment products.[1] With more than 750 members, the Toy Association advocates on behalf of its members, and for more than 40 years has been a global leader in toy safety. It also serves as a unifying force for members' creativity, responsibility, and global success, advocating for their needs and championing the benefits of play. The Toy Association has a dedicated team leading the industry's safety initiatives, including fulfilling the role of chair in the ongoing review process for the ASTM F963 Toy Safety Standard, and educating manufacturers on safety and quality standards. The Toy Association serves as the voice of toy manufacturers with regulators in the U.S. and internationally.

The Juvenile Products Manufacturers Association, Inc. is a not-for-profit corporation organized under the laws of New York that represents businesses involved in creating children's products used to care for and protect children from before birth through preschool. Juvenile Products Manufacturers Association's more

---

[1] In accordance with Fed R. App. P. 29(a)(4)(E) and 2d Cir. R. 29.1(b), none of the parties are members of the Toy Association, Juvenile Products Manufacturers Association, and Halloween Industry Association, Inc. The parties and their counsel have not participated in, nor contributed any funds toward the preparation or submission of this brief. No person (other than Amici, their members, or their counsel) contributed money intended to fund the preparation or submission of the brief. The brief was authored solely by The Toy Association, Juvenile Products Manufacturers Association, Halloween Industry Association, Inc., and their counsel.

than 200 members include manufacturers, importers, laboratories and distributors of juvenile products, and its members account for almost 90% of all sales of such products in the United States. Juvenile Products Manufacturers Association's mission is to be a leading force in the growth and health of the juvenile products industry, including advocating for public policies, laws and juvenile product ASTM Safety Standards that promote the health, care, and well-being of babies.

Halloween Industry Association, Inc. (also d/b/a Halloween & Costume Association) is a not-for-profit Delaware corporation that represents businesses involved in the manufacture, importation or distribution of Halloween products including costumes, decor, novelty items and party supplies. The Halloween Industry Association, Inc. has grown to become the preeminent authority on Halloween and serves as a non-profit voice of the industry.

All parties have a keen interest in assuring that there are no counterfeits of their members' children's products, which meet stringent safety requirements under U.S Federal law, distributed and sold in U.S. commerce.

The Toy Association, Juvenile Products Manufacturers Association, and Halloween Industry Association, Inc. are collectively referred to herein as "Amici."

## SUMMARY OF THE ARGUMENT

Amici support Appellant's brief. As discussed below, counterfeiters use a variety of common tactics to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down. Rights holders should be permitted to use alternative service and Counterfeiters should not be able to easily avoid service and continue to violate U.S. law without consequence.

## ARGUMENT

### I. The Offshore Counterfeiting Industry

Circuit courts have recognized as far back as the 1980s that the sale of counterfeit merchandise is a massive worldwide problem.[2] "Selling counterfeit and pirated goods through e-commerce is a highly profitable activity: production costs are low, millions of potential customers are available online, [and] transactions are convenient . . ." Department of Homeland Security, Office of Strategy, Policy & Plans, *Combating Trafficking in Counterfeit and Pirated Goods, Report to the President of the United States*, Jan. 24, 2020 (the "DHS Report") at 10.

E-commerce sales, including through online stores have resulted in a sharp increase in the shipment of unauthorized products into the United States, especially from China. *See generally* U.S. Customs and Border Protection, *Intellectual Property Rights Seizure Statistics, Fiscal Year 2021*, CBP Publication No. 2018-0922, Sept. 29, 2022 (hereinafter, "FY 2021 IPR Seizure Statistics"). E-commerce sales allow for the distribution of counterfeits directly to consumers via a high volume of small packages, as opposed to transporting them to a distributor via large shipping containers. The shift to small packages makes it harder for authorities to detect counterfeit shipments, resulting in proportionally fewer counterfeit goods being intercepted and seized by law enforcement. Chow, Daniel C.K., *Alibaba,*

---

[2] *Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 588 (7th Cir. 1989).

4

*Amazon, and Counterfeiting in the Age of the Internet*, 40 Nw. J. Int'l L. & Bus. 157, 171 (2020). The below chart prepared by the U.S. Customs and Border Protection Office of Trade shows the increase in the shipment of small packages into the United States:



*Figure 1 – FY 2021 IPR Seizure Statistics at 23*

Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue. The U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans found that "[l]egitimate companies,

and particularly small business, report devastating impacts due to the abundance of competing online counterfeits and pirated goods." DHS Report at 19. The U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans found that "American enterprises have little recourse aside from initiating legal action against a particular vendor." *Id*.

Counterfeiters use a variety of tactics to deceive consumers and avoid detection by brand owners and law enforcement. Counterfeiters "routinely use false or inaccurate names and addresses when registering with . . . Internet platforms" that do not require sellers to verify their identities. Chow, *supra* at 186 (2020). Counterfeiters hedge against the risk of being caught by preemptively establishing multiple virtual storefronts: "[r]apid proliferation also allows counterfeiters to hop from one profile to the next even if the original site is taken down or blocked." DHS Report at 11. The report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020) found that "at least [on] some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and concluded that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. DHS Report at 11, 35-36. These registration patterns are one of many common tactics used by counterfeiters to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

6

Given the ease of counterfeiters' ability to hide behind storefronts without providing legitimate contact information, it is often extremely difficult for rightsholders, consumers or law enforcement to ascertain the true identify or location of the counterfeit seller. As such, Amici and their members maintain that rights holders should be permitted to use alternative service and counterfeiters should not be able to easily avoid service and continue to violate U.S. law without consequence.[3]

## CONCLUSION

Amici support Appellant's brief.

---

[3] Amici support Appellant's brief and references the authority cited therein. *See also In re OnePlus Tech. (Shenzhen) Co., Ltd*., No. 2021-165, 2021 WL 4130643, at *3 (Fed. Cir. Sept. 10, 2021) (unpublished) (confirming that district courts are accorded "broad discretion" in ordering service under Fed. R. Civ. P. 4(f)(3) and that Rule 4(f)(3) stands independently on equal footing with Rule 4(f)(1)); *Nagravision SA v. Gotech Int'l Tech. Ltd*, 882 F.3d 494, 498 (5th Cir. 2018) ("Overlooking Rule 4(f)(3) entirely, Gotech argues that the service did not comply with the Hague Convention and Rule 4(f)(1). This argument misses the mark because service was not effected pursuant to the Hague Convention, and that agreement does not displace Rule 4(f)(3).").

Respectfully submitted,

By: s/Justin R. Gaudio
Attorney for *Amici Curiae*

Justin R. Gaudio
Amy C. Ziegler
GREER, BURNS & CRAIN, LTD.
300 S. Wacker Drive, Suite 2500
Chicago, Illinois 60606
Tel: (312) 360.0080
Fax: (312) 360.9315

*Counsel for Amici Curiae*

## <u>CERTIFICATE OF COMPLIANCE</u>

The brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). The brief contains 1,533 words as calculated by the word count of the word processing system used in preparing it, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Fed. Cir. R. 32(b). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(6).

The brief has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO (Version 2209 Build 16.0.15629.20256) 32-bit in Times New Roman 14-point font.

/s/ Justin R. Gaudio

9

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 17, 2024, an electronic copy of the foregoing Amici Curiae Brief was filed with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Amici Curiae emailed Defaulting Defendants a link to a website with a copy of the Amici Curiae's Motion and Brief on this 17th day of May 2024.

/s/ Justin R. Gaudio